United States District Court
District of Massachusetts

```
_____
                               )
PLUM ISLAND SOAP COMPANY, LLC, )
        Plaintiff,             )
                               )
        v.                     )    Civil Action No.
                               )    11-11033-NMG
DANIELLE AND COMPANY, INC., a  )
Pennsylvania corporation and   )
DANIELLE KELLI PLEMING,        )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Plum Island Soap Company, LLC ("Plum Island") brings this action against Danielle Kelli Fleming and her company, Danielle and Company, Inc. (collectively, "Danielle") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, unfair competition and false description in violation of 15 U.S.C. § 1125(a), a violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2 and 11, unjust enrichment and injury to business reputation. Before the Court is plaintiff's motion for a preliminary injunction.

**I.   Factual Background**

The following are the facts as alleged in plaintiff's complaint.  In 1999, Michele Ulchak began doing business as Plum Island Soap Company, which produces all-natural, scented soaps,

-1-

creams and oils.  One of Plum Island's most successful products is The Man Can, which is a gift set of soaps and scents marketed toward men and packaged in a paint can with a large black and white label identifying it as "The Man Can".  On the top of the can is a paint can opener and bottle opener embossed with Plum Island's name.

Plaintiff alleges that The Man Can is the most successful of Plum Island's products, has been sold in all 50 of the United States and Canada and was featured in the Boston Globe as one of its "20 quirky gift ideas under $50."  On September 23, 2009, Plum Island applied to register "The Man Can" mark with the United States Patent and Trademark Office ("the PTO").  On August 17, 2010, the PTO approved the application and issued a Certificate of Registration.

Danielle advertises itself as a manufacturer of organic, scented soaps, shampoos, body washes, lotions, and other similar products.  In 2009, Danielle began marketing a set of soaps and shampoos for men called "The Manly Man Can", "The Classic Man Can" and "The Modern Man Can" ("the Danielle Cans").  The Danielle Cans are apparently packaged in a paint can, using trade dress substantially similar to that used by Plum Island.

Plum Island claims it has sent Danielle a number of cease and desist letters with respect to her marketing of the Danielle Cans and using the paint can trade dress.  In response, Danielle

modified its design and then stopped selling the can products altogether.  Danielle's "vendors", however, continue to sell previously purchased merchandise.

Plaintiff filed her complaint and motion for a preliminary injunction on June 9, 2011.  On July 14, 2011, waivers of service signed by the defendants were docketed as returned executed. Both parties appeared at a motion hearing on Wednesday, August 10, 2011.  Because the parties have been unable to reach an agreement on a proposed preliminary injunction after being instructed to try by the Court, each party submitted a proposed order.

## II.  Legal Analysis

### A.    Standard of Review

To obtain preliminary injunctive relief under Fed. R. Civ. P. 65, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships and (4) a fit (or lack of friction) between the injunction and the public interest.

Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Likelihood of success on the merits is the critical factor in the analysis and, accordingly, a strong likelihood of success may overcome a "somewhat less" showing of another element.  See E.E.O.C. v. Astra United States, Inc., 94 F.3d 738 (1st Cir. 1996).

In trademark cases, the first factor plays an even greater role because the resolution of the other three factors will depend, in large part, on whether the plaintiff is likely to succeed in establishing infringement. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006). That focus on likelihood of success is consistent with the idea that, "as a matter of public policy, trademarks should be protected against infringing uses." Id.

**B.   Application**

**1.   Likelihood of Success on the Merits**

Section 43(a) of the Lanham Act provides:

> Any person who . . . uses in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). To prevail on a claim of trademark infringement, the plaintiff must demonstrate that 1) it owns a valid, legally protectable mark, and 2) the defendant's use of that mark will likely result in consumer confusion. Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 9 (1st Cir. 1996). Both registered and unregistered trademarks are eligible for protection against infringing uses. Borinquen Biscuit Corp., 443 F.3d at 117; see 15 U.S.C. §§ 1114, 1125.

### a. Ownership

The owner of Plum Island, Michele Ulchak, states in her affidavit that Plum Island obtained a Federal Trademark Certificate No. 3,833,999 for the Man Can and defendants do not dispute that fact.  Thus, it is clear that the ownership element is satisfied here, at least with respect to the trademark.  Plum Island did not, however, register its trade dress.

### b. Likelihood of Confusion

The key element in the infringement analysis is the likelihood of confusion.  In making that assessment, the Court considers eight factors: 1) similarity of the marks, 2) similarity of the services, 3) relationship between the parties' channels of trade, 4) relationship between the parties' advertising, 5) classes of prospective purchasers, 6) evidence of actual confusion, 7) defendant's intent in adopting its mark and 8) the strength of the plaintiff's mark.  <u>Pignons S.A. de Mecanique de Precision</u> v. <u>Polaroid Corp.</u>, 657 F.2d 482, 487 (1st Cir. 1981).  The burden is substantial: a plaintiff alleging trademark infringement must show more than a mere "possibility of confusion" and instead must demonstrate a "substantial likelihood of confusion."  <u>Bear Republic Brewing Co.</u> v. <u>Cent. City Brewing Co.</u>, 2010 WL 2330411, at *5 (D. Mass. June 7, 2010).

### i.  Similarity of Marks

When assessing the similarity of two marks, the Court should consider the "sight, sound and meaning" of the marks. Boustany v. Boston Dental Grp., Inc., 42 F. Supp. 2d 100, 107 (D. Mass. 1999). The determination should be a holistic one, taking into account the "total effect" of each mark, rather than comparing their "individual features." Pignons, 657 F.2d at 487; Boustany, 42 F. Supp. 2d at 107.

"The Man Can" and Danielle's original can design are remarkably similar. In fact, one might say they look uncannily alike. Both use the phrase "Man Can" in their title and consist of soap-related products sold in a paint can with a white and black label. The cans are the same size and have the same general layout and similar font type on the label. The substantial risk of confusion is, therefore, readily apparent with respect to Danielle's original design. There is less risk of confusion with respect to Danielle's modified design because that design is, at least, distinct in color and does not use "Can" in its title.

### ii.  Similarity of the Services

The similarity of the services is clearly established here, as both companies sell soaps and lotions marketed toward men.

### iii. Similarity of Advertising, Channels of Trade and Prospective Customers

Similarities of advertising, channels of trade and prospective customers are generally considered together. See Pignons, 657 F.2d at 488.

Both companies' products are available for purchase in Massachusetts. Plum Island is a Massachusetts-based business which sells to customers throughout the United States and Canada through its website and trade shows in Boston, Philadelphia, Atlanta and New York. Danielle's products are offered for sale throughout the United States and in Massachusetts through its website. Danielle's website also identifies five retail locations in Massachusetts where its products are sold. Thus, the products are directed at the same prospective customers.

### iv. Evidence of Actual Confusion

Evidence of actual confusion is often the "best possible evidence" of future confusion. Borinquen, 443 F.3d at 120. Where the products have only coexisted in the market for a short period of time, however, lack of actual confusion is less salient, and, in any event, actual confusion is "not indispensable to a finding of likelihood of confusion." See id. at 121 (two years of product coexistence is not long enough to expect actual confusion); TriMark USA, Inc. v. Performance Food Grp., LLC, 667 F. Supp. 2d 155, 167 (D. Mass. 2009) (lack of evidence of consumer confusion irrelevant where logos had only

coexisted for several months). Where actual confusion has occurred, however,

> [it] is such persuasive evidence of the likelihood of confusion that even a minimal demonstration of actual confusion may be significant.

Copy Cop, Inc. v. Task Printing, Inc., 908 F. Supp. 37, 45 (D. Mass. 1995) (citing Boston Athletic Assoc. v. Sullivan, 867 F.2d 22, 31 (1st Cir. 1989)).

Michele Ulchak reports in her affidavit an instance of actual consumer confusion regarding the origin of The Man Can. She reports receiving an email from a potential customer in May, 2011 who had seen The Man Can at the New York International Gift Fair ("NYIGF"). Plum Island had never exhibited at the NYIGF, however, and Danielle had. Michele Ulchak also attaches a letter from a retailer who carries her products in which the retailer complained of the similarity between the two Man Cans.

### v. Defendant's Intent in Adopting Mark

It is unclear whether Danielle intended to copy Plum Island's design. In April, 2010, after Plum Island alerted Danielle to the similarity, Danielle changed the label on the Danielle Cans instead of ceasing its distribution altogether. The original design, however, is almost identical to Plum Island's Man Can.

### vi.   Strength of the Marks

In evaluating the strength of the marks, the Court considers factors such as the length of time the mark has been used, its relative renown and plaintiff's vigilance in promoting its mark. See Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 16 n.14 (1st Cir. 2008); see also Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 40 (1st Cir. 2006).

Plum Island's Man Can had already been on the market for five years when Danielle began its line of can products in 2009. Plum Island had enjoyed some publicity and was featured in the Boston Globe in 2010 as one of its "20 quirky gift ideas under $50". Plaintiff has also undertaken considerable efforts to market The Man Can by spending thousands of dollars on advertising, trade shows and trade publications.

In sum, the Court concludes that plaintiff has shown a substantial likelihood of confusion with respect to the original Danielle design but not necessarily the modified design.

### 2.   Irreparable Harm

In the context of trademark litigation, irreparable harm is generally presumed if a plaintiff demonstrates a likelihood of consumer confusion.  See Commerce Bank & Trust Co. v. TD Banknorth, Inc., 554 F. Supp. 2d 77, 87 (D. Mass. 2008).  Because there is a substantial likelihood of confusion, irreparable harm

may be presumed and this prong weighs in favor of granting a preliminary injunction.

### 3. Balance of the Equities

Given that Danielle has ceased to sell its products with the original design, there is little evidence that Danielle will suffer a hardship from this preliminary injunction. Danielle may have to refund vendors, but that is an easily quantifiable hardship which can be remedied should it later prevail on the merits. In light of plaintiff's showing of a substantial likelihood of confusion with Plum Island's product, which predates Danielle's product by five years, the Court finds that the balance of the equities weighs in favor of a preliminary injunction here.

### 4. Public Interest

The public interest is served by preventing consumer confusion. See Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F. Supp. 994, 1015 (D. Mass. 1988). Because there is a substantial likelihood of confusion in this case, this prong weighs in favor of granting a preliminary injunction.

Thus, upon careful consideration of the plaintiff's motion and the counter proposals of the parties, the Court finds that a preliminary injunction is warranted and hereby enters the following preliminary injunction:

**ORDER AND PRELIMINARY INJUNCTION**

It is hereby **ORDERED**, **ADJUDGED** and **DECREED** that:

1) Defendants Danielle and Company, Inc. and Danielle Kelli Fleming are hereby enjoined from using the "The Man Can", "The Manly Man Can", "The Modern Man Can", "The Classic Man Can" or any other confusingly similar name with respect to any of their products.

2) Defendants are not enjoined from selling, promoting, marketing, advertising or distributing their products using their modified design so long as they do not include "Can" in their title and do not have labels confusingly similar to plaintiff's current white and black label.

3) Defendants shall notify in writing all "vendors" that have purchased defendants' can products listed in paragraph 1 of this order that:

   (a) those products may no longer be sold, promoted, marketed, advertised or distributed until further notice,

   (b) those products may be returned to defendants for a full refund,

   (c) Plum Island Soap Company, LLC is the exclusive provider of "The Man Can", and

   (d) defendant is not affiliated with, sponsored by or associated with Plum Island Soap Company, LLC.

Defendants shall also notify in writing all "vendors" that have purchased defendants' can products listed in paragraph 2 of the information contained in subparagraphs (c) and (d) above.

-11-

4) Defendants and their "vendors" shall include the following disclaimer on any website or any Internet site they operate to sell their can products: "Danielle and Company, Inc. is not in any way related to or affiliated with the Plum Island Soap Company, LLC."

5) Defendants shall file with this Court and serve on plaintiff, on or before September 19, 2011, a report in writing, signed under oath by an officer of defendant company, which sets forth in detail the manner and form in which defendants have complied with this injunction.

6) Under these circumstances, plaintiff is not required to post a bond where defendants have agreed to at least a modified preliminary injunction.

This preliminary injunction shall remain in full force and effect until the case is decided on the merits or until modified by further order of this Court.

**SO ORDERED.**

                                          /s/ Nathaniel M. Gorton
                                          Nathaniel M. Gorton
                                          United States District Judge

Dated August 19, 2011